## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**CHARON WADE,**                    )
                                    )
     **Plaintiff,**             )
                                    )
  **v.**                        )     **Civil Action No. 17-1258 (RMC)**
                                    )
**DISTRICT OF COLUMBIA,**           )
                                    )
     **Defendant.**            )
_____      )

## MEMORANDUM OPINION

What are the responsibilities of the District of Columbia Public Schools in fulfilling the express terms of a student's Individualized Education Program? The Individuals with Disabilities Education Act assures parents that the public school system will teach their child with a learning disability, even if it means putting the child in a private school where his needs can be met. In this case, the District of Columbia Public Schools admits that it failed to provide the full number of hours of specialized education J.W. needed for two years; beyond that, however, an independent hearing officer decided that J.W.'s social maladjustment, not his disability, accounted for his refusals to attend classes regularly or to obtain behavioral counseling. A limited remedy was awarded. J.W.'s mother, Charon Wade, appeals, arguing that the hearing officer blamed her child for his own disability.

## I. FACTS

Ms. Wade appeals from a Hearing Officer Determination (HOD) that partly rejected her claim that the District of Columbia Public Schools (DCPS) violated the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400, *et seq.*, by failing to provide her son J.W. with a free appropriate public education (FAPE). IDEA provides that any party aggrieved

by an HOD may seek redress through a civil action in state or federal court. *Id.* at § 1415(i)(2). Ms. Wade asks the Court to find that J.W. was denied a FAPE in all the ways alleged in the Complaint and to order DCPS to fund appropriate compensatory education for any denial of FAPE not already remedied by the HOD. She also seeks any other relief deemed equitable. *See* Notice of Withdrawal (Notice) [Dkt. 15] at 2.[1]

J.W. is a District of Columbia resident. HOD, AR at 6.[2] He has been receiving special education services since 2009, according to the Special Education Data System. Final Eligibility Determination Report (FEDR), AR at 383. He has been diagnosed with Specific Learning Disability (SLD), which impacts his skills in math, written expression, and reading, as well as his emotional/social/behavioral development. 3/31/14 IEP, AR at 46-49; FEDR, AR at 374. His diagnosis means that J.W. is considered a "child with a disability" under IDEA, 34 C.F.R. § 300.8(c)(10)(i), and that he is entitled to an IEP. *Id.* § 300.323. In relevant part, his school placement history is as follows:

- Friendship Public Charter School, Woodridge Middle – 8th Grade (2013-2014 school year);

- Cesar Chavez Public Charter School, Capitol Hill Campus – 9th Grade (2014-2015 school year);

---

[1] According to her Notice of Withdrawal, Ms. Wade is no longer seeking two forms of relief previously requested in her summary judgment motion: (1) an order specifying that the student requires an Individualized Education Program (IEP) and corresponding placement that provides at least 27.5 instructional hours per week outside general education and a Least Restrictive Environment at a separate special education day school; and (2) an order to place and fund J.W. at New Beginnings Vocational School, with transportation. Notice at 1.

[2] Citations to the Administrative Record [Dkt. 14] reflect the document title and the administrative record page number.

- Dunbar Senior High School – 10th Grade (2015-2016 school year), 11th Grade (2016-2017 school year), 12th Grade (2017-2018 school year).[3]

3/31/14 IEP, AR at 40-54; 10/16/14 Multidisciplinary Team (MDT) Meeting Notes, AR at 55-86; 1/12/15 IEP Annual Progress Report, AR at 87-100; 12/6/16 Dunbar HS Report Card-Grade 11, AR at 364; Hr'g Tr., C. Wade, AR at 654.

While J.W. was enrolled at Friendship Public Charter School, he received 27.5 hours of specialized instruction and 1 hour of behavioral support services per week, as required by his IEP. HOD, AR at 6; 3/31/14 IEP, AR at 40-49. As part of his transition from middle school to high school, Ms. Wade agreed to waive the requirements of J.W.'s IEP so that he could attend Cesar Chavez Public Charter School-Capitol Hill (Chavez). 10/16/14 Parent Letter of Informed Placement Decision, AR at 60. Chavez agreed to provide J.W. with 18 hours per week of specialized instruction inside a general education setting, and 1 hour per week of "related services" outside the general education setting. *Id.* Ms. Wade placed J.W. at Chavez with the understanding that the school would "do all that they could and pull out all the possible things that they could have to work with [J.W.] as best as possible." Hr'g Tr., C. Wade, AR at 654-55. It was understood that if J.W. did not make progress at Chavez, the IEP team would reconvene to discuss a new location of services. 10/16/14 MDT Meeting Notes, AR at 57.

On March 17, 2015, after meeting numerous times during the school year, J.W.'s IEP Team[4] concluded that J.W. required 27.5 hours of specialized instruction outside general education each week and 240 minutes (4 hours) per month of behavioral support services as he

---

[3] J.W. was also placed at the Department of Youth Rehabilitation Services' Youth Services Center (YSC) for some period in early 2016. *See* YSC Report on Student Progress, AR at 343.

[4] IDEA sets out the requirements for an IEP Team; the composition of the Chavez IEP Team and J.W.'s education at Chavez are not at issue. *See* 34 C.F.R. § 300.321.

was "not making adequate progress in the general education setting." 3/17/15 Multidisciplinary Team Meeting Notes, AR at 122; *see also* 3/17/15 IEP, AR at 101-18. It was determined that he "required small group instruction as he continued to struggle to master grade level material and standards, because of task avoidance, low frustration tolerance and improper classroom behaviors." 3/17/15 IEP, AR at 110.

On March 20, 2015, DCPS engaged in a least restrictive environment assessment (LRE), in which they assessed J.W. with the aim of finding a placement to meet his needs. LRE Classroom Observation Tool, AR at 129-135. DCPS also completed a Functional Behavior Assessment (FBA) of J.W. on April 17, 2015 and the IEP team reviewed it at a meeting on May 5, 2015. The FBA stated that J.W. "does better in small group settings where a teacher can work with him individually to ensure he understands the material." FBA, AR at 136-39.

Ms. Wade received a letter from DCPS on July 14, 2015 stating, "while no IEP revisions are being proposed as part of this letter, Dunbar H[igh] S[chool] is the DCPS school that has the programming in place to [meet J.W.'s] IEP needs." Location of Services (LOS) letter, AR at 144. It further explained, "[J.W.'s] location is changing for the 2015-2016 School Year because Dunbar HS is the closest school with [the] required specialized program and has space available in the Specific Learning Support classroom." *Id.* The parties disagree about whether this location of services letter was presented to Ms. Wade as an option or a requirement. However, it is undisputed that J.W. started at Dunbar High School in the fall of 2015. *Id.* According to DCPS documentation, the Specific Learning Support (SLS) program is for students with learning disabilities or challenges "where behavior is not the primary impediment to access the general education curriculum." *See* Special Education Programs & Resources Guide for Families, School Year 2017-2018 (Resource Guide) at 18, *available at* https://dcps.dc.gov/sites/

default/files/dc/sites/dcps/publication/attachments/Family%20Programs%20and%20Resources%20Guide%2017-18_0.pdf (last visited August 13, 2018).[5] The Resource Guide explains various terms and policies that are relevant here:

- Most DCPS students can be served in the general education (regular) classroom, in a Learning Lab or in a full-time classroom.

- "Inside of general education" means that the specialized instruction and related services for students with disabilities will be served while they are with their peers without disabilities in the general classroom.

- "Outside of general education" refers to all specialized instruction and services that are provided to a class or grouping made up entirely of students with disabilities.  Students with less than 20 hours of specialized instruction outside of general education in their IEPs typically receive services in a Learning Lab, also referred to as a resource room or pull-out services.

- DCPS's full-time, district-wide classrooms provide specialized support to students with 20 or more hours of specialized instruction outside of general education in their IEP.  Our full-time classrooms are designed to give more support to students with disabilities who have a high level of need.

*See* Resource Guide at 3.

---

[5] The Court takes judicial notice of this publicly available DCPS brochure, as the accuracy of DCPS's policies as published in its own brochure cannot reasonably be questioned.  *See* Fed. R. Evid. 201(c); *see also Washington Post v. Robinson*, 935 F.2d 282 (D.C. Cir. 1991) (taking judicial notice of newspaper articles in the Washington, D.C. area); *Agee v. Muskie*, 629 F.2d 80, 81 n. 1, 90 (D.C. Cir. 1980) (taking judicial notice of facts generally known because of newspaper articles).  A copy is in the court files.

From the fall of 2015 when he was placed at Dunbar until January 17, 2017, J.W.'s IEPs specified that he needed 27.5 hours per week of specialized instruction outside of general education. *See* 9/29/15 IEP, AR at 162-78; 10/2/15 Amended IEP, AR at 179-96; 3/18/16 IEP, AR at 282-303; 5/18/16 Amended IEP, AR at 315-37. "An IEP with 27.5 hours of specialized instruction outside of general education requires all classes, including academic and non-academic such as electives, to be with only special education students." Compl. [Dkt. 1] ¶ 29.[6] J.W.'s IEP was revised on January 17, 2017, to reduce J.W.'s specialized education requirement to 20 hours per week because that was all Dunbar had provided and could provide. 1/17/17 IEP, AR at 390-407. Ms. Wade testified that she was unaware that J.W.'s IEP had been changed until a later meeting at the school, and that she did not agree to the change. HOD, AR at 8; Hr'g Tr., C. Wade, AR at 684-85.

On March 13, 2017, Ms. Wade filed a due process complaint under IDEA challenging the reduction in special education hours for J.W. and his placement at Dunbar. Due Process Complaint Notice, AR at 409-24. DCPS responded on March 29, 2017. DCPS Response to Due Process Complaint, AR at 434-42. The school held a resolution session on March 29, 2017, but the parties were unable to resolve the matter. 3/29/17 Resolution Period Disposition Form (Resolution Form), AR at 443-47. The matter was then presented at a hearing before a hearing officer on May 22 and 24, 2017. The hearing officer rendered the Hearing Officer Determination on June 10, 2017. HOD, AR at 3-23.

The HOD reached three "conclusions of law": (1) Ms. Wade established a *prima facie* case that DCPS had denied J.W. a FAPE by failing to provide an appropriate educational

---

[6] Incredibly, DCPS answered this statement in paragraph 29 of the Complaint with the statement "[t]he District lacks sufficient information to admit or deny the factual allegations in this paragraph." Answer [Dkt. 5] ¶ 29. The Court deems Complaint paragraph 29 to be conceded.

placement for him in 2015-2016 and 2016-2017, when his IEPs required 27.5 hours per week outside of general education; (2) however, Ms. Wade had not shown that DCPS failed to implement J.W.'s IEP prior to January 2017 because the "proportion of what Student was actually missing did not rise to the level of materiality" and "any failure to provide services was *de minimis*"; and (3) Ms. Wade made a *prima facie* showing that J.W.'s January 17, 2017 IEP denied him a FAPE but DCPS showed that the IEP was appropriate under the circumstances. HOD, AR at 12-27. The Hearing Officer awarded 50 hours of compensatory education to J.W. for the denial of FAPE. *Id.* at 18.

The Complaint in this matter was filed on June 27, 2017. *See* Compl. Count I alleges that DCPS failed to provide an appropriate placement for J.W. for the 2015-2016 and 2016-2017 school years. Count II alleges that DCPS failed to implement J.W.'s IEP from August 2015 through the date of the Due Process Hearing, *i.e.*, May 24, 2017. Count III alleges that DCPS failed to develop an appropriate IEP for J.W. in January 2017, when it cut his specialized instruction outside general education from 27.5 hours per week to 20 hours.

## II. LEGAL STANDARD

### A. IDEA

"The Individuals with Disabilities Education Act (IDEA or Act) offers States federal funds to assist in educating children with disabilities." *Endrew F. ex rel. Joseph F. v. Douglas County School Dist. RE-1*, 137 S. Ct. 988 (2017) (citing 84 Stat. 175, as amended, 20 U.S.C. § 1400 *et seq.*). Under IDEA, a state receiving funds must provide a FAPE to all eligible children. 20 U.S.C. § 1412(a)(1); *see also Leggett v. District of Columbia*, 793 F.3d 59, 62 (D.C. Cir. 2015) ("Every child with a disability in this country is entitled to a 'free appropriate public education,' or FAPE.") (citation omitted). Children determined eligible for special education services under the Act receive an IEP, which provides the blueprint for the special education and

related services to be provided, which must be "tailored to the unique needs" of each eligible child and updated regularly. *Bd. of Ed. of Hendrick Hudson Cen. Sch. Dist., Westchester Cty v. Rowley*, 458 U.S. 176, 181 (1982) (To qualify under IDEA, states must have in effect "a policy that assures all handicapped children the right to a 'free appropriate public education,' which policy must be tailored to the unique needs of the handicapped child by means of an . . . IEP.); *see also Henry v. District of Columbia*, 750 F. Supp. 2d 94, 96 (D.D.C. 2010) (citation omitted).

As this district has recently noted, "aware that schools had all too often denied [children with disabilities] appropriate educations without in any way consulting their parents, Congress repeatedly emphasized throughout [IDEA] the importance and indeed the necessity of parental participation in both the development of the IEP and any subsequent assessments of its effectiveness." *Middleton v. District of Columbia*, No. 17-88, 2018 WL 2582591, at *2 (D.D.C. June 4, 2018) (citing *Honig v. Doe*, 484 U.S. 305, 311 (1988)). IDEA establishes procedures that provide parents with "both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate." *Honig*, 484 U.S. at 311.

### B. Due Process Hearing

If a parent of a student with a disability is dissatisfied with a school district or agency's "identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child," 20 U.S.C. § 1415(b)(6), IDEA entitles them to present their arguments in an "impartial due process hearing," *id*. § 1415(f). At that hearing, the parties may present evidence and expert testimony about the child's educational and functional needs. *Id*. § 1415(f), (h). After the hearing, an independent hearing officer issues an HOD, which determines whether a school district denied the student a FAPE and, if so, orders an appropriate remedy. *Id*. § 1415(f)(3)(E); *see also B.D. v. District of Columbia*, 817 F.3d 792,

798 (D.C. Cir. 2016). Any party aggrieved by the hearing officer's determination may bring a civil action in state or federal court. 20 U.S.C. § 1415(i)(2).

**C. Review of Hearing Officer's Conclusions and Analysis of the Record**

Although motions for review of an HOD are styled as motions for summary judgment, the court does not follow "a true summary judgment procedure." *L.R.L. ex rel. Lomax v. District of Columbia*, 896 F. Supp. 2d 69, 73 (D.D.C. 2012) (citation omitted). Instead, a motion for summary judgment in this context operates as a motion for judgment on the record and on any additional evidence presented by the parties. *D.R. ex rel. Robinson v. District of Columbia*, 637 F. Supp. 2d 11, 16 (D.D.C. 2009). As neither party provided additional evidence in this case, the motion for summary judgment "is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." *Q.C-C. v. District of Columbia*, 164 F. Supp. 3d 35, 44 (D.D.C. 2016) (citation omitted).

A party challenging a hearing officer's administrative determination "must at least take on the burden of persuading the court that the hearing officer was wrong." *See Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1989). "While the court must make an independent determination, the court also should give due weight to the decision of the hearing officer and should afford some deference to the expertise of the hearing officer and the school officials." *D.K. v. District of Columbia,* 983 F. Supp. 2d 138, 144 (D.D.C. 2013) (citation omitted). However, the Court affords less deference to HODs in the context of IDEA than is conventional in administrative proceedings. *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005). "A hearing decision without reasoned and specific findings deserves little deference." *Id*.

In IDEA cases, the Court has broad discretion to fashion appropriate relief under the Act. 20 U.S.C. § 1415(i)(2)(B)(ii), (iii) (requiring trial courts to "grant such relief as the

court determines is appropriate"); *see also Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 15-16, (1993).

### III.   ANALYSIS

Ms. Wade advances two basic complaints about J.W.'s education at Dunbar High School.  First, Dunbar failed to provide 27.5 hours per week of special education outside general education and second, it failed to provide a small and more structured educational environment, both of which were required by J.W.'s IEPs dated March 17, 2015, September 25, 2015, and March 18, 2016.  Ms. Wade also complains that the IEP developed on January 17, 2017 was inappropriate because it reduced J.W.'s specialized instruction outside general education from 27.5 hours each week to 20 hours each week, because that was all Dunbar could provide. Further, Ms. Wade complains that Dunbar did not provide the behavioral counseling that J.W. needed, per his IEPs.

The hearing officer agreed in part and disagreed in part.  He recognized that Dunbar had failed to afford J.W. the required hours of special education outside general education classes before January 2017 but attributed J.W.'s lack of academic progress to his social maladjustment and not to his disability.  As to J.W.'s hours in class, he determined:

> [Dunbar] could not provide Student with 27.5 hours/week of specialized instruction outside general education.  Special Education Coordinator acknowledged that [Dunbar] doesn't provide electives outside general education, so that [it] was out of compliance with Student's IEP, an understanding shared by Educational Advocate and [Community Based Intervention] Case Manager.

HOD, AR at 7 (citations omitted).  In the Location of Services letter, DCPS told J.W.'s mother that Dunbar "has the programming in place to meet" J.W.'s needs and that "no IEP revisions" were proposed when he entered Dunbar.  LOS letter, AR at 144.  However, Dunbar never fulfilled the requirements of J.W.'s IEP; his non-core classes were always taught in a general

education setting. Despite J.W.'s specific need for 27.5 hours per week of specialized education, Dunbar apparently had no "full-time, districtwide classrooms [to] provide specialized support to students with 20 or more hours of specialized instruction outside of general education in their IEP," *see* Resource Guide, and therefore was never able to satisfy J.W.'s IEP until it dropped 7.5 hours of specialized education from his IEP in January 2017.

What cannot be overlooked is that J.W.'s IEP also required 240 minutes (4 hours) per month in behavioral counseling but J.W. increasingly became defiant and was unwilling to participate in such counseling in his second year at Dunbar. DCPS was attentive to this problem and changed his social worker in an effort to engage J.W., but to no avail. Hr'g Tr., B. Young, AR at 960-61 (Special Education Coordinator's testimony regarding change in social worker). J.W. told Dunbar: "I told ya'll in that meeting my mother and lawyer came to, I am not going to counseling at all." Behavioral Support Service (BSS) Tracker, AR at 218. J.W. also increasingly absented himself from classes, wandering the halls or talking to friends in the cafeteria. Again, DCPS made multiple efforts to get J.W. *to school* (arranging for him to be transported) and *to class* but he would leave the classroom. The HOD attributed his poor grades to his voluntary failure to attend classes and not to the failure of Dunbar to fulfill the special education requirements of his IEP. HOD, AR at 13-18.

The Court understands the reasoning behind the HOD but respectfully disagrees. It is not possible on the record here to find that Dunbar was a correct placement for J.W. from the very beginning. It was predictable that Dunbar would never be able to satisfy the requirements of J.W.'s IEPs, either as to hours of special education outside a general education classroom or small class sizes for all courses. His needs for both were clearly stated. 3/17/15 IEP, AR at 101-18 (J.W. "requires small group specialized instruction as he continues to struggle

to master grade level material and standards."); 9/29/15 IEP, AR at 162-78 (J.W. "requires small

group specialized instruction as he continues to struggle to master grade level material and

standards."); 3/18/16 IEP, AR at 282-303 (J.W. "requires small group specialized instruction as

he continues to struggle to master grade level material and standards.").

      The Court agrees with the hearing officer that DCPS denied J.W. a FAPE for the

2015-2016 and 2016-2017 school years until January 17, 2017.  In addition, the Court finds that

DCPS failed to provide J.W. with a FAPE during the remainder of the 2016-2017 school year,

during the dates J.W. was enrolled at Dunbar, due to the reduction of special education hours in

J.W.'s January 17, 2017 IEP.  In light of these findings, the Court will adjust the remedy.

### A.   Claim One:  Failure to Provide an Appropriate Educational Placement

      Ms. Wade alleges that DCPS failed to make an appropriate educational placement

for J.W. when it placed him at Dunbar, and that the hearing officer erred in providing only "*de

minimus* [sic] compensatory education."  Pl.'s Mot. for Summ. J. (Pl.'s Mot.) [Dkt. 8] at 9.

When he entered Dunbar, J.W.'s IEP required 27.5 hours per week of specialized instruction

outside of general education in a small-class setting where he could get one-on-one teacher

attention.  Instead, J.W. received 20 hours per week of specialized instruction and participated in

electives in general education for the entirety of his enrollment at Dunbar.  Mr. Young, Special

Education Coordinator at Dunbar, testified that J.W. never received the full services prescribed

in his 27.5-hour IEP until the IEP was changed on 1/17/17 because it was "out of compliance."

Hr'g Tr., B. Young, AR at 1026-29.

      As a preliminary matter, the HOD noted that "DCPS considers 20 hours per week

of specialized instruction outside general education to be full-time and only provided 20 hours at

[Dunbar], notwithstanding the 27.5 hours on [J.W.'s] IEP."  HOD, AR at 14.  DCPS provides no

pedagogic basis to support this opinion.  When its opinion conflicts with the specific terms of an

IEP, especially when the IEP is ignored for years, what DCPS "considers" is irrelevant and must yield to the requirements of a child's education. In the past, other students in the District have had IEPs prescribing significantly more than 20 hours per week outside general education. *See, e.g.*, *Johnson v. District of Columbia*, 962 F. Supp. 2d 263, 265 (D.D.C. 2013) (student's IEP provided for 31 hours of specialized instruction); *G.B. v. District of Columbia*, 78 F. Supp. 3d 109, 112 (D.D.C. 2015) (student's IEP provided for 31 hours of specialized instruction); *Middleton*, 2018 WL 2582591, at *3 (student's IEP provided for between 25 and 27 hours of specialized instruction). One assumes they were not similarly capped at 20 hours.

What DCPS essentially admits, by considering 20 hours of specialized education to be "full-time," is that the school system may regularly fail to fulfill the special needs of its children despite the hard work of IEP teams to identify those needs. If Dunbar cannot provide more than 20 hours of special education outside a general education setting, a fact that seems demonstrated on this record but as to which the Court makes no specific finding, DCPS cannot place students at Dunbar who have such needs. The Court adopts the Hearing Officer's determination that "27.5 hours outside of general education differs substantially from 20 hours, and should not be treated as indistinguishable 'full-time' IEPs." HOD, AR at 14. However, this Court does not agree with the HOD's further conclusion that the absence of 7.5 hours of special education each week was a *de minimis* violation.

The benchmark under IDEA for determining the appropriateness of a student's educational placement, and thus whether the student was provided a FAPE, is that DCPS "must place the student in a setting that is capable of fulfilling the student's IEP." *Johnson*, 962 F. Supp. 2d at 267. The Court concurs with the hearing officer's finding that DCPS placed J.W. at Dunbar even though Dunbar never met his IEP requirements at any time he was a student there.

*See* HOD, AR at 14; *see also* 3/17/15 IEP, AR at 101-18; 9/29/15 IEP, AR at 162-78; 3/18/16

IEP, AR at 282-303.  As the hearing officer explained, "here, quite simply, [Dunbar] could not

fully implement [J.W.'s] IEP."  HOD, AR at 14.  This failure was not "an inconsequential, short

term problem, but continued . . . for nearly a year and a half."  *Id*.  J.W. was denied a minimum

of 7.5 hours per week of the specialized education mandated by his IEPs for the entirety of the

2015-2016 school year, and for the 2016-2017 school year until at least implementation of the

1/17/17 IEP.

        While the Court agrees with the hearing officer's finding that DCPS denied J.W. a

FAPE with respect to his educational placement at Dunbar and for the entire time he attended

Dunbar, the relief ordered was inadequate to address the breadth and length of the denial of a

FAPE that is shown and admitted by DCPS here.  Compensatory education is an award of

services "to be provided prospectively to compensate for a past deficient program."  *Reid ex rel.*

*Reid v. District of Columbia*, 401 F.3d 516, 522-23 (D.C. Cir. 2005) (citing *G. ex rel. RG v. Fort*

*Bragg Dependent Schs.*, 343 F.3d 295, 308 (4th Cir. 2003)).  Such an award "involves

discretionary, prospective, injunctive relief crafted by a court to remedy what might be termed an

education deficit created by an educational agency's failure over a given period of time to

provide a FAPE to a student."  *Id.* at 523.

        DCPS provides annual calendars on their website, which detail the number of

"Student Days" per term and per year.  In the 2015-2016 school year, there were 181 Student

Days.[7]  Divided into five-day weeks, this constitutes approximately 36 school weeks per term.

This means that DCPS failed to provide J.W. approximately 271 hours of specialized education

---

[7] *See* District of Columbia Public Schools 2015-2016 School Calendar,
https://dcps.dc.gov/sites/default/files/dc/sites/dcps/publication/attachments/DCPS%20SY15-
16%20Small%20Calendar%20Final.pdf (last visited Aug. 20, 2018).

to which he was entitled during the 2015-2016 school year, and another approximately 271 hours during 2016-2017 school year.[8]

While the Court is cognizant that compensatory damages are not subject to a "cookie cutter approach," or "mechanical hour-counting," the "ultimate award must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." *Reid*, 401 F.3d at 524. The Court finds that the hearing officer's award of 50 hours of mentoring services, with any unneeded hours available for academic tutoring, is insufficient to provide the educational benefits DCPS denied J.W. by failing to provide him an appropriate placement during the years he was at Dunbar.

**B. Claim Two: Failure to Implement IEPs from 3/17/15, 9/29/15, and 3/18/16, Behavioral Support Services from October 2016 to March 2017, and Behavioral Intervention Plan/Behavior Trackers from December 2016 until March 2017.**

Ms. Wade alleges that DCPS denied J.W. a FAPE by failing to implement (a) his full 27.5 hours per week of specialized instruction outside general education from the 3/17/15, 9/29/15, and 3/18/16 IEPs; and (b) behavioral support services from October 2016 to present and behavioral intervention plan/behavior trackers from December 2016 until March 1, 2017. The HOD explained that "for a failure to implement claim, IDEA is violated only when a school district deviates materially from a student's IEP." HOD, AR at 15 (citing *Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 822 (9th Cir. 2007)).

---

[8] *See* District of Columbia Public Schools 2016-2017 Traditional School Calendar, https://dcps.dc.gov/sites/default/files/dc/sites/dcps/publication/attachments/ENGLISH%20-%202016-2017%20DCPS%20Traditional%20School%20Calendar%201-30-17_0.pdf (last visited Aug. 20, 2018).

Using this standard, the Hearing Officer found that Ms. Wade did not meet her burden of proof because he did not consider the failure to provide "a little more than one-fourth of [J.W.'s] specialized instruction" to be a deviation from J.W.'s IEP rising "to the level of materiality." *Id*. at 16. The Court disagrees. Neither DCPS nor the hearing officer provides any support for the conclusion that the failure to implement 27% of J.W.'s IEP was immaterial or that electives are not "of equal weight to the other 20 hours" of J.W.'s coursework and should not have been instructed in special education classes with small groups and immediate teacher attention. *See id*. at 16. In fact, this district has recently found that a failure to implement a student's IEP fully, where two of the three classes at issue were electives, was material. *Middleton*, 2018 WL 2582591, at *19. The student's IEP in *Middleton* called for 27 hours of specialized instruction per week but the student was enrolled in general education classes for Music and Physical Education and his World History class was an inclusion class, containing both special and general education students. *Id*. *Middleton* found that DCPS had failed to implement either 20% or 40% of the student's IEP, depending on whether World History was included, and that this was not a *de minimis* failure. *Id*. In addition, the court noted that "the fact that the student was enrolled in general education courses, despite clear direction in his IEP requiring otherwise, likely compounded [the student's] other difficulties during the 2015-2016 school year." *Id*. This Court likewise finds that DCPS's failure to implement 7.5 hours out of J.W.'s 27.5-hour IEP was not a *de minimis* failure. The Court agrees with the hearing officer that "DCPS appeared cavalier . . . in not providing a placement to Student capable of providing the hours outside general education that were on his IEP for a year and a half." HOD, AR at 15.

The Court concludes that DCPS denied J.W. a FAPE by failing to provide more than one-fourth of the specialized instruction hours prescribed by his IEP.[9]

With respect to the behavioral support services (BSS) issue, the hearing officer explained that "BSS is essential for Student to access the curriculum." HOD, AR at 9. The Court agrees. The hearing officer determined that J.W. "has consistently refused BSS," *id.*, and that Dunbar "changed Student's social worker to try to get him to accept services, without success." *Id.* at 10. The record indicates that J.W. attended his weekly one-hour sessions with a social worker throughout the 2015-2016 school year, as well as in August and September 2016. *See* Service Tracker, AR at 197, 199, 200, 202, 203, 206, 208, 211, 213. It appears that J.W. began to decline his weekly session in October 2016. *See id.* at 215-16. As with the attendance issues addressed later herein, the extent to which the inappropriate placement and failure to implement J.W.'s IEPs fully affected his access to BSS is difficult to discern, but it is implausible to say they are unrelated. Ms. Wade asserts that when J.W. began to refuse the sessions, he had already been denied an appropriate placement and IEP implementation for a full academic year. *See* Pl.'s Mot. at 27. Additionally, the record indicates that there was inconsistency in DCPS's maintenance of his behavior tracker. Hr'g Tr., E. Figueroa, AR at 839.

---

[9] The parties disagree as to whether J.W. was able to participate in lunch, specials, and physical education with his peers in a general education setting. *Compare* Pl.'s Mot. at 11 ("While the LRE report recites that teachers feel he can participate in specials, cafeteria, and Physical Education with his peers that is not reflected in the IEP, which prescribes 27.5 hours outside of general education") *with* Def.'s Opp'n and Cross-Mot. for Summ. J. (Def.'s Mot.) [Dkt. 9] at 4 ("J.W.'s teachers at Cesar Chavez found his 'resistance to do work' impacted his academic performance and that Student could 'participate in specials, cafeteria, and P.E.' with his nondisabled peers."). First, "specials" is not defined. Second, it was J.W.'s lack of progress at the inclusive environment at Cesar Chavez that resulted in a new placement; his IEP required 27.5 hours per week of class outside a general education environment, which should have included his electives. 3/31/14 IEP, AR at 40-54; 10/17/14 Amended IEP, AR at 61-74; 3/17/15 IEP, AR at 101-18; 9/29/15 IEP, AR at 162-78; 10/2/15 Amended IEP, AR at 179-96; 3/18/16 IEP, AR at 282-303; 5/18/16 Amended IEP, AR at 315-37.

The testimony that J.W.'s new social worker seemed to be unaware of the behavior tracker suggests that it was not monitored by Dunbar, at least for some period. *Id.* at 839-40. The fact that behavioral support services were offered, even if refused, does not ameliorate DCPS's failure to implement J.W.'s IEP as a clear denial of FAPE. However, the Court agrees with the hearing officer that J.W. refused behavioral support services although Dunbar made good faith efforts to provide them. The Court finds that DCPS did not fail to implement behavioral support services and therefore did not deny J.W. a FAPE in this regard.

### C. Claim Three: Failure to Develop an Appropriate IEP on January 17, 2017 when Specialized Instruction was reduced from 27.5 hours to 20 hours.

Ms. Wade asserts that the reduction in J.W.'s weekly specialized instruction hours in the January 17, 2017 IEP was not calibrated to provide him with appropriate progress under the circumstances, and that the hearing officer erred in finding otherwise. The hearing officer concluded that 20 hours per week of specialized instruction, as required by J.W.'s January 17, 2017 IEP, was "sufficient to provide appropriate progress for Student in the circumstances," and thus DCPS had rebutted Ms. Wade's *prima facie* evidence that the reduction in instructional hours denied a FAPE to J.W. HOD, AR at 17. As both parties note, the Supreme Court has held that "to meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F.*, 137 S. Ct. at 999.

DCPS makes a series of representations to support the decrease in J.W.'s hours of special education, but the argument at its core is that J.W.'s lack of progress is a direct result of his poor classroom attendance. *See* Def.'s Mot. at 18. This assertion is also at the heart of DCPS's response to the appropriateness of J.W.'s placement at Dunbar and the implementation of his IEPs while he attended school there. DCPS states that "J.W.'s report cards generally show

a correlation between reduced absences and higher grades." *Id.* at 18 (citing 12/5/16 Student

Support Team Meeting Attendance Plan, AR at 341-42; 12/6/16 Dunbar HS Report Card-Grade

11, AR at 354). While the argument makes common sense, it does not recognize that DCPS

failed to place J.W. at a school that could implement the hours of special education and class

sizes required by his IEPs. This may sound like a chicken-and-egg (which comes first?)

problem, but the responsibility under the law lay with DCPS and it failed. The IEPs predicted

that DCPS's failure to fulfill its requirements would lead to increasing difficulties in providing

J.W. an education, which is demonstrably what happened.

There is no doubt that J.W.'s behavior and class attendance increasingly suffered

while he was at Dunbar. However, "[c]ourts in this jurisdiction have assumed that a student may

be denied a FAPE if his educational plan does not contain sufficient interventions to adequately

address attendance issues." *Middleton*, 2018 WL 2582591, at *20. DCPS took some admirable

steps to mitigate J.W.'s attendance problems, *see* Daily Attendance Tracker, AR at 145-153;

3/18/16 IEP, AR at 292; 5/18/16 Amended IEP, AR at 315 (adding transportation services to

IEP), but it failed at the most important step: achieving an appropriate educational placement

and fully implementing J.W.'s IEPs. DCPS may not fail to place a student at an appropriate

school (even if a private school is needed), fail to implement that student's IEP fully, and then

demand that the student shoulder the full responsibility for subsequent, likely related, behavior or

attendance issues. If this were a situation in which DCPS had made an appropriate educational

placement, fully implemented J.W.'s IEP including attempts to mitigate attendance issues, and

J.W. had refused to show up for school or attend certain classes nonetheless, this case would

require a different analysis. But that is not what happened. As the court in *Middleton*, this Court

"will not attempt to disentangle the problem of [the student's] inappropriate placement from his issues with attendance; they are clearly linked." *Middleton*, 2018 WL 2582591, at *21.

While Defendant's briefs spend significant space on J.W.'s attendance issues, for which it blames J.W., the record indicates that Dunbar reduced J.W.'s special education hours in January 2017 because the high school had never been able to provide the full hours of specialized instruction required by his successive IEPs, *i.e.*, 27.5. The notes from the resolution session and the testimony of Mr. Young, Special Education Coordinator at Dunbar, support the assertion that J.W.'s IEP hours were changed because the IEP was "out of compliance." HOD, AR at 7; Resolution Form, AR at 450. Mr. Young testified, "for whatever reasons [the IEP] was not put into compliance until we met in January [2017]" and at that point J.W. "still required a full time IEP out of general education which requires only 20 hours per week." Hr'g Tr., B. Young, AR at 1026. Frankly, this testimony is surprising: an IEP is not "put into compliance" until and unless it is implemented as written or changed for pedagogic reasons in a manner sufficient to provide appropriate progress for the student under the circumstances. DCPS offers nothing beyond Mr. Young's *ipse dixit* that a "full time IEP out of general education . . . requires only 20 hours per week."

The Court appreciates that DCPS may not be able to provide more than 20 hours of specialized education per week in its regular schools. That limitation on the system's capacity does not excuse its failure to provide a free appropriate public education beyond 20 hours/week when a student has such needs, as does J.W. DCPS must place such students in a non-public school to fulfill its obligations under the law.

As IDEA applied here, DCPS had a responsibility to ensure that J.W. was provided with an educational placement that could fulfill all of his IEP requirements. *See*

*Johnson*, 962 F. Supp. 2d at 267.  Instead, DCPS placed J.W. in a school that could never

accommodate his IEP and then changed the IEP to fit the placement.  That series of events does

not support a finding that DCPS tailored J.W.'s January 2017 IEP to meet his unique needs, *see*

*Rowley*, 458 U.S. at 181, or that it was calibrated to support J.W.'s progress at Dunbar.  *See*

*Endrew F.*, 137 S. Ct. at 999.  The Court concludes that the 1/17/17 IEP was not reasonably

calculated to enable J.W. to make progress appropriate in light of his circumstances when it

reduced J.W.'s specialized instruction hours outside of general education from 27.5 to 20 per

week.

## IV.    CONCLUSION

Upon review of the administrative record, including the Hearing Officer

Determination, the Court finds that:  (1) DCPS denied J.W. a FAPE when it did not provide an

appropriate educational placement; (2) DCPS denied J.W. a FAPE when it materially failed to

implement his IEP; and (3) DCPS denied J.W. a FAPE when it reduced his special educational

instruction hours without pedagogic support and in a manner not reasonably calculated to allow

him to make progress.  The Court will grant in part and deny in part Ms. Wade's Motion for

Summary Judgment, Dkt. 8.  Summary judgment will be granted to Ms. Wade on all claims other

than the behavioral support services claim.  The Court will grant in part and deny in part DCPS's

Cross-Motion for Summary Judgment, Dkt. 9.  Summary judgment will be granted to DCPS as

to the behavioral support services claim.  Because Ms. Wade has advised the Court that J.W.'s

circumstances have changed since the due process hearing, *see* Notice, the Court will set a status

conference to discuss the issue of remedy.


Date: August 22, 2018                          _____
                                               ROSEMARY M. COLLYER
                                               United States District Judge